### UNITED STATES v. THAYER.
### No. 10893.

United States Court of Appeals
Seventh Circuit.

Jan. 13, 1954.

16. See 150 A.L.R. note, 1067, 1075 et seq.

William E. Crowder, Minneapolis, Minn., Alex L. Soroka, Superior, Wis., for appellant.

Frank L. Nikolay, U. S. Atty., Madison, Wis., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

Thayer appeals from a jury's verdict of guilty on the first and third counts [1] of an information charging three separate violations of 18 U.S.C. § 1154

1. Defendant was sentenced to four years on count one and four years on count three, to run concurrently and fined $500 on count one. Subsequently these sentences were reduced to two years, respectively.

(1946), 18 U.S.C.A. § 1154. Count one concerns his alleged sale of beer, on July 8, 1951, to four Indians, wards of the government,[2] under charge of an Indian superintendent and count three pertains to a sale of beer, on April 24, 1952, to still another Indian ward.

■■ Among the several challenges leveled against his conviction, by defendant, are some peculiarly applicable to count one. He now cites various statements of the trial judge, made in the jury's presence, as being indicative of reversible error. Our canvass of this entire record, with particular emphasis on the specific passages quoted by defendant, discloses no objections interposed by defense counsel to such remarks. If there was error, it has been waived. However, our examination satisfies us that this appeal does not contain palpable or prejudicial error as we can take cognizance of, and correct, despite want of an objection during trial. Fed.R.Crim.P. 52(b), 18 U.S.C.A.

■■ Words of the trial judge are not to be isolated for assessment. Ochoa v. United States, 9 Cir., 1948, 167 F.2d 341. Nor are specimens of his comments to be wrested out of context and measured against those intriguing generalities cited to us from various cases by the defendant. While there is no single formula for gauging judicial discretion such contentions as raised by this defendant must be resolved in an environment supplied by the full record. Consequently we think there has been no impingement on the substantial rights of Thayer and that his complaint concerning the judge's cross-examination of various witnesses is also devoid of merit. Griffin v. United States, 1947, 83 U.S. App.D.C. 20, 164 F.2d 903.

■■ But we do find sufficient indications, from this record, that the scope of defendant's cross-examination was not improperly restricted. An admonition against counsel's repetitious questioning is not a constriction on the area of inquiry.

Our sequential treatment of defendant's points bearing on count one places the following résumé of evidence at this place in our opinion, though we subsequently dispose of his motion for judgment of acquittal.

The evidence, for both sides, on count one can be distilled to simply this. Three of the Indians named in that count testified they each had a bottle of beer in the defendant's tavern on July 8, 1951. A daughter of two of these vendees corroborated the sale. Defendant countered this evidence with his own denial and the testimony of several witnesses. One group of defense witnesses denied seeing these Indians in the tavern and the other denied that these named Indians were in the tavern on the specified date.

■■ We mention the motion for a new trial, at this stage, because it relates to count one. Denial of this motion is not subject to review save for clear abuse of discretion, which is absent here. United States v. Hartenfeld, 7 Cir., 1949, 113 F.2d 359.

■■ By introducing evidence, on his own behalf, defendant abandoned his motion[3] for acquittal made when the government rested its case, Gaunt v. United States, 1 Cir., 1950, 184 F.2d 284, thereby leaving, for our consideration, only the motion for judgment of acquittal tendered after the jury's verdict.

Turning now to the evidence underlying count three, which we find demonstrates, in substance, that:

Four special officers[4] for the United States Indian Service: L. B. Harwood and his deputy, Frank Cobb, H. P. Davis and Walter C. Martin; together with Sheriff Emil Stusek of Burnett County

2. It was so stipulated.

3. These motions do not appear in the original transcript of record transmitted to this Court, but since both parties have argued the point we have considered them in this opinion.

4. Harwood, Davis and Stusek testified for the Government. Cobb was deceased at the time of trial.

and his deputy, C. Lenahan, had defendant's tavern under surveillance on the date specified in count three.

For the principal role in their investigative activity Harwood hired an Indian, George Taylor, as a posse-man. Davis was present when Harwood gave Taylor five dollars to purchase beer or liquor, as evidence, from defendant's tavern. Harwood searched Taylor's automobile for beer before dispatching him on his assignment.

Harwood and Davis were parked in their automobile at a point about 150 yards from the front door of defendant's tavern. Other members of this group were watching the tavern from another vehicle stopped within 160 to 170 yards of that building.

From their respective locations Harwood, Davis and Sheriff Stusek watched Taylor make two trips in and out of the tavern. At first Taylor came out empty handed and went over to a garage near the tavern. But when he emerged the second time he carried a package to his automobile (parked in front of the tavern) and immediately drove to, and stopped somewhat beyond, Sheriff Stusek's parking place.

Stusek and Harwood immediately followed Taylor's car until it stopped. During his testimony, Harwood stated, that he had constantly observed the Taylor car traveling from the tavern to this meeting place, where the officers surrounded it.

At that time Taylor handed out a "twelve pack of beer" to the officers. Harwood and Stusek initialed that package [5] and Taylor signed his name there-

on. Harwood retained control of this sealed package from that moment until it was offered in evidence below—at which time the seal was broken by opening [6] the package.

After taking delivery of that package from Taylor, Harwood, Stusek and Davis returned to the tavern where Harwood asked defendant if he had sold beer to Taylor. According to Harwood the defendant replied "There were some Indians in here," but he would not admit making a sale to Taylor.

Defendant, pursuant to Stusek's request, authorized Stusek and Harwood "to look around the premises." In Stusek's presence Harwood examined serial numbers appearing on the "12 packs" of Northern Beer, found stacked in a back room. Comparing serial number 55,407 on the seized package, with those in this pile of cartons, Harwood ascertained that an open package, on top, was numbered 55,402, immediately under which was one numbered 55,403. Stusek testified that these cartons were in sequence, viz., 55,402, 3, 4.

Our narration now reaches into the area of George Taylor's testimony. Despite his own question, expressed when opening [7] to the jury, concerning the posse-man's mental competency the United States Attorney sponsored Taylor as a witness. Moreover, a prefatory statement made by the government attorney, as Taylor took the witness stand, revealed that this witness was then in custody of the United States Marshal, under an indictment for murder.

Defendant now urges, and we think without merit, that the trial judge

---

5. This was Exhibit No. 1 on which was written:

"Purchased from Elwin Thayer 4/24/52, 6:10 P. M." * * * "George Taylor * * * a cross, * * * LBH., E. V. S., C. F. L., and L. C. C." (Typewritten record, 151)

6. The printed matter, appearing on one of the cans taken from Exhibit 1, was read aloud by the trial judge, viz: "Northern Superior Northern Famous Superior Beer, Brewed and filled by the Northern Brewing Company, Superior. Internal

Revenue Tax Paid. Contents 12 ounces fluid. On the cap appear the words 'Northern Famous Superior Beer.'" (Typewritten record, 164). Counsel for the defense admitted it was beer (*id.* 164).

7. "You will not hear direct testimony from Mr. Taylor. There is a very serious question in my mind as to whether at this time he is competent to testify—mentally competent to testify—and, anticipating some objections from the defense, he will not testify." (T.R. 6)

should have extensively explored Taylor's mental competency. But we find no formal or urgent objection interposed by defense counsel, to Taylor's testimonial qualifications. In fact nothing more than a diluted observation [8] concerning the point appears in the record. However, any valid doubt of Taylor's capacity was readily dissipated by his showing during cross-examination and his subsequent responses to the trial judge's questions.[9]

It is unnecessary to relate a detailed account of Taylor's testimony since it generally corroborates and deviates little from, the parol evidence of Harwood, Stusek and Davis. When called upon to do so, Taylor identified the defendant in the courtroom. The crux of the posseman's testimony appeared during cross-examination where, *inter alia,* the forthright question was put to him by defense counsel: "And it was Elwin Thayer, the defendant, here, that sold it [10] to you for two and half dollars?" Taylor said: "That's right."

Although denying making a sale to the posse-man, defendant admitted while testifying in his own behalf, that Taylor sought to purchase beer on the date specified in count three; that he (the defendant) rejected him. Defendant acknowledged granting permission to search his premises, but regarded evidence concerning sequence of the serial numbered cartons as coincidence.

Dorothy Thayer, testifying for the defense, described the defendant as her guardian; confirmed Taylor's visit to the tavern and his inquiry as to her father's whereabouts when she refused to sell beer to him.

We have summarized only those evidentiary matters which, after detailed examination and evaluation of the entire record, are essential and material to this opinion.

We will not annul the jury's verdict on counts one and three. United States v. Hack, 7 Cir., 1953, 205 F.2d 723. Our opinion that it was not error, upon this record, for the trial judge to deny defendant's motion for judgment of acquittal, is derived from the application of that judicial yardstick described in United States v. Yeoman-Henderson, Inc., 7 Cir., 1952, 193 F.2d 867, 869, viz.:

"When a motion for a judgment of acquittal is made, the sole duty of the trial judge is to determine whether substantial evidence, taken in the light most favorable to the government, tends to show the defendant is guilty beyond a reasonable doubt. * * *"

That quotation is peculiarly pertinent to the quantum of evidence adduced here by the government. But we undertake no closed definition of "substantial evidence."

Substance is completely wanting in defendant's contentions concerning the trial judge's charge to the jury. When asked by the judge, presiding below, if he had any exceptions to the charge, defense counsel unequivocally

---

8. "Mr. Soroka: Do you think the Court should make some further inquiry with respect to his competency, as long as the United States Attorney has raised the question as to his competency?

"The Court: Well, I think he will be able to testify all right. We will go along.

"You know why you have been called here, or asked to come over here. The Marshal brought you over here as a witness in this Thayer case. Yes, go ahead. Ask your questions." (T.R. 200)

9. "The Court: How is it about this affair? Do you have a pretty good recollection of this affair?

"The Witness: Yes.

"The Court: You remember all the details of this?

"The Witness: Oh, yes, I remember.

"The Court: Everything that was said and done, and what you did?

"The Witness: Yes, that's right.

"The Court: And what you have told us is that the truth?

"The Witness: Yes, that's true." (T. R. 224–225).

10. The "12 pack" (T.R. 223–224).

stated that he had none.[11]  Certainly such objections come too late, when first announced on appeal.  Wyche v. United States, 1951, 90 U.S.App.D.C. 67, 193 F.2d 703, 704; Fed.R.Crim.P. 30, 18 U. S.C.A.

By not itemizing the many sided attack launched by the defendant against his conviction we indicate that upon mature consideration of each one no merit was found.

The judgment of the District Court, accordingly, is affirmed.

Affirmed